Docket No. 86100

PHL, INC., *et al.*, Respondents, v. PULLMAN BANK AND TRUST COMPANY *et al.*, Petitioners.

*Order entered March 24, 1999.*

HARRISON, J., took no part.

JUSTICE MILLER, concurring:

Although I did not take part in the consideration or disposition of the previous motion in this case, I believe it is appropriate for me to participate in the resolution of the petitioners' present request that we now appoint judges to replace those of us who found it necessary to recuse ourselves from the earlier motion. As the petitioners recognize, in urging the recused members of the court to participate in this aspect of the present proceeding, this part of the current motion raises important questions involving the internal procedures of our court, and therefore the participation of all members in its consideration and disposition is proper. See *Perlman v. First National Bank*, 60 Ill. 2d 529, 530 (1975) (Underwood, C.J., dissenting).

I concur in the court's decision to deny the petitioners' request for the temporary appointment, or assignment, of justices. The petitioners contend that our assignment power, found in article VI, section 16, of the Illinois Constitution, enables this court to appoint substitute members who may sit in our stead if we are required to recuse ourselves in a particular case. Section 16 provides, "The Supreme Court may assign a Judge temporarily to any court and an Associate Judge to serve

temporarily as an Associate Judge on any Circuit Court." Ill. Const. 1970, art. VI, § 16.

With respect to this court, however, the preceding power is necessarily limited to the filling of vacancies in the office of judge of the Supreme Court; the composition of this court, unlike the composition of the appellate court and the circuit courts, is fixed by the Constitution, and we have no authority to alter the number of judges on the court. Article VI, section 3, states, "The Supreme Court shall consist of seven Judges." Ill. Const. 1970, art. VI, § 3. There is no provision that permits us to enlarge our own number, even on a temporary basis, whether through the assignment power or any other means.

Discussing the operation of sections 3 and 16 of article VI of the Constitution as they relate to this court, Justice Simon explained in *Madden v. Cronson*, 114 Ill. 2d 504, 517 (1986) (Simon, J., specially concurring):

"Nothing in either provision suggests that the temporary assignment authority can be exercised merely to 'replace' a judge who has recused himself. As I understand the constitutional scheme, our power to make temporary assignments to this court, the sole court in this State for which the exact number of offices is defined in the Constitution, extends only to filling vacancies in office."

For these reasons, I would continue to adhere to the procedure followed in *Perlman v. First National Bank*, 60 Ill. 2d 529 (1975), and I join the majority decision here to deny the petitioners' request for the temporary appointment of judges to replace members of this court who have recused themselves.

CHIEF JUSTICE FREEMAN and JUSTICE BILANDIC join in this concurrence.

JUSTICE BILANDIC, also concurring:
The dissent selectively refers to research conducted

by this Court. It neglects to state that our research also revealed that the majority of courts of last resort of other states do not appoint replacement judges due to recusals for the purpose of voting on discretionary appeals.

Petitions for writ of *certiorari* to the United States Supreme Court are similar to petitions for leave to appeal to our court. The United States Supreme Court does not appoint replacement judges when recusals occur in deciding whether to allow or deny *certiorari*. I prefer to follow the direction of the highest Court in this land.

My learned dissenting colleague and friend should graciously accept the fact that former Chief Justice Underwood was a lone dissenter in *Perlman v. First National Bank of Chicago*, 60 Ill. 2d 529 (1975). His valiant effort to revive that dissent into a majority opinion has failed. We should move on to other business.

JUSTICE MILLER joins in this concurrence.

JUSTICE HEIPLE, dissenting:

The petition for leave to appeal filed in this case was dismissed because, two justices having recused themselves, this court was unable to secure the constitutionally required concurrence of four justices to either allow or deny the petition. In the instant motion, petitioners ask this court to appoint substitute justices to replace those members of the court not participating in the disposition of the petition. I would grant petitioners' motion.

In *Perlman v. First National Bank of Chicago*, 60 Ill. 2d 529 (1975), former Chief Justice Underwood called upon this court to appoint replacement justices when a recusal prevents the court from securing the concurrence of four justices in reaching a decision. *Perlman*, 60 Ill. 2d at 531 (Underwood, C.J., dissenting). Chief Justice Underwood noted that article VI, section 16, of the Illinois Constitution gives this court authority to "assign a Judge

temporarily to any court." Ill. Const. 1970, art. VI, § 16. The Chief Justice suggested that this constitutional authority be used to ensure that all decisions of this court command the constitutionally required concurrence of four justices. Unfortunately, his proposal was not adopted.

I agree with Chief Justice Underwood that appointment of replacement justices is appropriate in cases such as this. Because two justices have recused themselves, the petitioners in the instant case must convince 80 percent of the participating justices (four out of five) to allow their petition for leave to appeal, rather than the 57 percent (four out of seven) required when the entire court participates. Petitioners should not be so penalized. Petitioners are entitled, just as any other litigant, to a decision made by a full complement of justices.

The justices concurring in the denial of the instant motion argue that appointing replacement justices to decide this petition for leave to appeal would violate the Illinois Constitution's directive that "the Supreme Court shall consist of seven judges." Ill. Const. 1970, art. VI, § 3. This argument ignores the fact that a replacement justice would be appointed only for the purpose of voting on a particular matter in which a member of this court was not participating. Any matter considered in such a fashion would thus be decided by no more than seven judges, fully comporting with the constitution. Indeed, it is the concurring justices who fail to honor the clear language of the Illinois Constitution. Article VI, section 16, authorizes this court to assign a judge temporarily to "any court." (Emphasis added.) Ill. Const. 1970, art. VI, § 16. In effect, my colleagues interpret this language to read "any court except the Supreme Court." Absolutely no legal principle, constitutional or otherwise, prevents this court from granting petitioners the relief they request. Rather, assignment of temporary justices to this

court is simply a matter of judicial policy entirely within this court's discretion.

Extensive research conducted by this court in connection with the instant motion reveals that in many other states, the court of last resort appoints replacement judges when, due to recusals, the court is unable to achieve a majority in favor of a particular disposition. Despite this evidence, and the clear grant of authority in the Illinois Constitution, my colleagues decline to afford the movants full and fair consideration of their petition.

The concurring justices, noting that the United States Supreme Court does not appoint replacement justices when deciding petitions for writs of *certiorari*, argue that we should follow the lead of "the highest Court in this land." On the contrary, there is no reason for us to follow the United States Supreme Court on this matter. In that court, only four out of nine votes, not even a majority, are needed to grant a *certiorari* petition. In our court, four out of seven votes, a clear majority, are needed to grant a petition for leave to appeal. Given the low threshold for disposition of a *certiorari* petition in the United States Supreme Court, there is little need for that court to adopt a system of replacement justices, while the instant case amply illustrates the great need for our court to do so.

One may speculate that the real reason for declining to assign a judge or judges to fill out a panel is grounded in pride of position rather than in a concern for the litigants or the law. For, quite frankly, the question is one of policy and not one of law.

For these reasons, I respectfully dissent.

JUSTICE McMORROW joins in this dissent.